O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOE BAUTISTA, | ) | Case No. CV 14-6148-KK |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND ORDER |
| v. | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Joe Bautista seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Title II Disability Insurance Benefits.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///

///

///

///

1

# I.

## PROCEDURAL HISTORY

Plaintiff Joe Bautista ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his Title II application for Disability Insurance Benefits ("DIB").  Plaintiff filed his initial claim on February 14, 2011 alleging a disability onset date of December 4, 2008.  Administrative Record ("AR") at 191-92.  The claim was denied initially on July 14, 2011, and upon reconsideration on October 14, 2011.  Id. at 93-97, 100-104.

On December 24, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Id. at 124-126.  On October 9, 2012, a hearing was held before ALJ Alan J. Markiewicz.  Id. at 35-66.

On December 21, 2012, the ALJ issued a decision denying Plaintiff's application.  Id. at 15-34.  On January 13, 2013, Plaintiff asked the Agency's Appeals Council to review the ALJ's decision.  Id. at 13-14.  On May 21, 2014, the Appeals Council denied Plaintiff's request for review.  Id. at 7-9.

On August 6, 2014, Plaintiff filed the instant action.  (ECF Docket No. ("dkt.") 3).  This matter is before the Court on the parties' Joint Stipulation ("JS"), filed August 17, 2015, which the Court has taken under submission.  (Dkt. 15).

# II.

## RELEVANT FACTUAL BACKGROUND

Plaintiff was born on July 28, 1971, and his alleged disability onset date is December 4, 2008.  AR at 191.  He was 37 years old at the time of the onset date, and 41 years old at the time of the hearing before the ALJ.  Plaintiff has an eighth grade education.  See id. at 43.  In his Disability Report, Plaintiff reported he worked as a laborer in agriculture from 1988 to 1994, in maintenance of a golf course from 1995 through 1996, and a truck driver from 1997 to December 2008.  Id. at 207.  Plaintiff

alleges disability based upon a back injury and problems with his left knee.  Id. at 206.

## III.

## STANDARD FOR EVALUATING DISABILITY

To qualify for DIB, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.[1]

(4)  Is the claimant capable of performing work she has done in the past?  If so, the claimant is found not disabled.  If not, proceed to step five.

---

[1] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)).  In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).  This involves, inter alia, evaluating the credibility of a claimant's testimony regarding her capabilities.  Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012).

1      (5)      Is the claimant able to do any other work?  If not, the claimant is found

2                 disabled.  If so, the claimant is found not disabled.

3 Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54

4 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

5      The claimant has the burden of proof at steps one through four, and the

6 Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.

7 Additionally, the ALJ has an affirmative duty to assist the claimant in developing the

8 record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets her

9 burden of establishing an inability to perform past work, the Commissioner must show

10 that the claimant can perform some other work that exists in "significant numbers" in the

11 national economy, taking into account the claimant's residual functional capacity

12 ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100;

13 Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

14

15 **IV.**

16 **THE ALJ'S DECISION**

17 **A.**     **Step One**

18      At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity

19 since December 4, 2008, the alleged onset date" of disability.  AR at 23.

20 **B.**     **Step Two**

21      At step two, the ALJ found Plaintiff "has the following 'severe' impairments:

22 degenerative joint disease of the left knee, status post arthroscopic surgery in 1996; and

23 disc disease of the lumbar spine."  Id.

24 **C.**     **Step Three**

25      At step three, the ALJ found Plaintiff did not meet or equal any of the impairments

26 listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 24.

27 **D.**     **RFC Determination**

28      The ALJ found Plaintiff "has the residual functional capacity to perform light work

as defined in 20 CFR 404.1567(b).  Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for two hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; and he can perform postural activities on an occasional basis." Id.

**E.      Step Four**

At step four, the ALJ found Plaintiff was "unable to perform any past relevant work." Id. at 28.

**F.      Step Five**

At step five, the ALJ found "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform," including sewing machine operator, production line solderer, and table worker. Id. at 29.  Therefore, the ALJ found Plaintiff "has not been under a disability, as defined in the Social Security Act from December 4, 2008, through the date of this decision." Id. at 30.

## V.

## DISPUTED ISSUES

The following issue is in dispute:

1.      Whether the ALJ improperly relied on deficient vocational testimony. Joint Stipulation ("JS") at 4.

## VI.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  This Court "may set aside a denial of benefits if it is not supported by substantial evidence or it is based on legal error." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citation and internal quotation marks omitted).

"Substantial evidence" is evidence that a reasonable person might accept as

5

adequate to support a conclusion.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Id.  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating a reviewing court "may not affirm simply by isolating a specific quantum of supporting evidence") (citations and internal quotation marks omitted).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").  The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination."  Robbins, 466 F.3d at 885 (citation and internal quotation marks omitted).

## VII.

## DISCUSSION

Plaintiff argues the ALJ improperly relied on ambiguous vocational expert ("VE") testimony that is inconsistent with the DOT,[2] and therefore unsupported by substantial

---

[2] "DOT" refers to the Dictionary of Occupational Titles, "which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." Massachi v. Astrue, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007) (citations omitted).  The DOT is the Social Security Administration's "primary source of reliable job information."  Zavalin v. Colvin, 778 F.3d 842, 845-46 (9th Cir. 2015) (citations and

1  evidence.  For the reasons set forth below, the Court agrees.

2      **1.      Background**

3          At the hearing, the ALJ asked the VE whether a hypothetical individual with

4  Plaintiff's age and the following functional limitations: "can lift and carry 20 pounds

5  occasionally and 10 pounds frequently, can stand and walk for six hours in an eight-hour

6  workday, can sit for six hours in an eight-hour workday, and can perform occasional

7  postural activity," would be able to perform "any unskilled work in the national

8  economy?"  AR at 59.  The VE answered that such an individual would be able to work

9  as a sewing machine operator, DOT 786.682-018, a production line solderer, DOT

10  813.684-022, and as a garment sorter, DOT 222.687-014.  Id. at 60.

11          The ALJ's next asked: "[I]f I were to modify the hypothetical to indicate that the

12  person could stand and walk for two hours total in an eight-hour workday, could this

13  person do the work of the sewing machine operator, production solderer, or garment

14  sorter?"  Id.  The VE responded: "Not the garment sorter, the production solderer and the

15  sewing machine operator."  Id.

16          The ALJ then asked if there was a job at the sedentary level than an individual with

17  such limitations could perform.[3]  The VE responded that one such job would be a table

18  worker, DOT 739.687-182.  Id.

19          In his decision, the ALJ stated "[t]he vocational expert testified that given

20  [Plaintiff's RFC with the limitation that he could only stand and walk for two hours total

21  in an eight-hour workday,] the individual would be able to perform the requirements of

22  representative occupations such as sewing machine operator, DOT 786.682-018, light,

23  SVP2, with 14,000 regional and 190,000 national jobs; as a production [line solderer],

24  DOT 813.684-022, light, SVP2 with 2,000 regional and 14,000 national jobs; and as a

25  ─────────────────────

26  internal quotation marks omitted).

27      [3] The ALJ specifically stated he was "only going to ask for one job as an example" of
28  available jobs at the sedentary level.  AR at 60.

7

1  table worker, DOT 739.687-182, sedentary, SVP2, with 130 regional and 3,700 national

2  jobs." AR at 29. The ALJ determined the VE's testimony was "consistent with the

3  information contained in the" DOT. Id. at 29. Hence, the ALJ concluded Plaintiff was

4  "capable of making a successful adjustment to other work that exists in significant

5  numbers in the national economy." Id. at 30.

6  **2.    Legal Standard**

7  At step five of the sequential evaluation, the ALJ must "identify specific jobs

8  existing in substantial numbers in the national economy that [the] claimant can perform

9  despite [his] identified limitations." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.

10  1995); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The ALJ can meet the burden

11  of showing there is other work in "significant numbers" in the national economy that the

12  claimant can perform by referring to the Medical-Vocational Guidelines, 20 C.F.R. Part

13  404, Subpart P, Appendix 2, or by eliciting the testimony of a vocational expert.

14  Lounsberry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006); Zavalin, 778 F.3d at 846.

15  "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only

16  insofar as the record contains persuasive evidence to support the deviation." Johnson v.

17  Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); see also Rawlings v. Astrue, 318 F. App'x

18  593, 594 (9th Cir. 2009) (holding "the vocational expert's ambiguous testimony is

19  insufficient to support the ALJ's conclusion"). "The ALJ has a duty to develop the

20  record in Social Security cases. This duty exists even when the claimant is represented

21  by counsel." DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) (internal citations

22  omitted).

23  The Ninth Circuit has explicitly held an ALJ may not "rely on a vocational expert's

24  testimony regarding the requirements of a particular job without first inquiring whether

25  the testimony conflicts with the Dictionary of Occupational Titles." Massachi, 486 F.3d

26  at 1152. In reaching this conclusion, the court reasoned:

27  SSR 00–4p unambiguously provides that "[w]hen a

28  [vocational expert] . . . provides evidence about the

8

requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any *possible* conflict between that [vocational expert] . . . evidence and information provided in the [Dictionary of Occupational Titles]."  SSR 00–4p further provides that the adjudicator "*will* ask" the vocational expert "if the evidence he or she has provided" is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict.

Id. at 1152-53 (footnotes omitted) (emphasis added).

"The ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence." Zavalin, 778 F.3d at 846 (citation omitted); Massachi, 486 F.3d at 1154 ("The procedural requirements of SSR 00-4p ensure that the record is clear to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT].").  However, the Court may find the procedural error to be harmless if there was no conflict or if the vocational expert provided sufficient support for the conclusion so as to justify any potential conflicts.  Massachi, 486 F.3d at 1154 n.19.

### 3.   Parties' Respective Positions

Defendant argues the VE's response, "Not the garment sorter, the production solderer and the sewing machine operator," means Plaintiff could not perform the job of garment sorter, but *could* perform the jobs of production solderer or sewing machine operator.  JS at 8.  Plaintiff argues the VE's response means he could not perform any of the three jobs, because all three are classified in the DOT as "light work," which requires six hours of standing/walking.  JS at 6.  In response, Defendant argues there are some "light work" jobs that can be performed while seated and, therefore, the VE's testimony is consistent with the DOT.  JS at 8.

///

### 4.    Application

As a preliminary matter, the VE's testimony, "Not the garment sorter, the production solderer and the sewing machine operator," is ambiguous as to whether Plaintiff could perform the jobs of sewing machine operator or production line solderer with an RFC limiting him to two hours of standing and walking. AR at 59-60. The ALJ failed to develop and clarify the evidence he relied on to support his conclusion Plaintiff could perform these jobs. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'"); see also Adams v. Colvin, No. CV 14-4649-DOC E, 2015 WL 667670, at *4 (C.D. Cal. Jan. 13, 2015) report and recommendation adopted, No. CV 14-4649-DOC E, 2015 WL 670296 (C.D. Cal. Feb. 12, 2015) (reversing and remanding where "the existing record is ambiguous and requires clarification . . . with respect to the existence of jobs Plaintiff might be able to perform).

Second, there is an unresolved potential conflict between the ALJ's determination that Plaintiff could perform the jobs of sewing machine operator and production line solderer, despite his RFC determination that Plaintiff "can stand and/or walk for two hours out of an eight-hour workday with regular breaks." AR at 24. Both jobs are classified in the DOT as "light work."[4]   DOT 786.682-018 and DOT 813.684-022. The

_____

[4] Pursuant to the DOT, the strength requirement for the jobs of sewing machine operator and production line solderer is as follows:

> STRENGTH: Light Work - Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant

DOT, as elaborated upon by SSR 83-10, describes light work as requiring "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).  While some jobs are classified as light work even though they are performed in a seated position when the pushing and pulling of arm-hand or leg-foot controls requires greater exertion than in sedentary work, SSR 83-10 explains that "relatively few unskilled light jobs are performed in a seated position."[5]  Id.

---

> degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

DOT 786.682-018 and DOT 813.684-022.

[5] SSR 83-10 elaborates on the activities needed to carry out the requirements of light work as follows:

> *Light work.*  The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs.  A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances).  *Relatively few unskilled light jobs are performed in a seated position.*

> "Frequent" means occurring from one-third to two-thirds of the time.  Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, *the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.*  Sitting may

1    Therefore, there is a potential conflict between the ALJ's RFC determination that

2    Plaintiff can stand or walk for only *two hours* and the DOT and SSR 83-10 description of

3    unskilled, light work as generally requiring *six hours* of standing and walking.

4        Where the DOT's requirements are unclear, there is an unresolved potential

5    inconsistency in the evidence that the ALJ has a duty to resolve and support with

6    substantial evidence.  <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 736 (7th Cir. 2006); <u>see also</u>

7    <u>Lorigo v. Colvin</u>, No. 1:13-CV-00405-SKO, 2014 WL 1577317, at *11 (E.D. Cal. Apr.

8    18, 2014) (holding ALJ erred by not resolving the apparent conflict between the VE's

9    testimony and the DOT, because the DOT does not discuss "light work" that is qualified

10   by restrictions on plaintiff's ability to sit, stand or walk, and the VE's response to the ALJ

11   when asked whether there was a conflict with the DOT was vague and ambiguous);

12   <u>Marshall v. Astrue</u>, No. 08CV1735-L(WMC), 2010 WL 841252, at *5 (S.D. Cal. Mar.

13   10, 2010) (finding an "apparent conflict" between RFC and DOT, because ALJ cannot

14   assume reaching with only one arm was sufficient to perform the proposed job); <u>Meyer v.</u>

15   <u>Astrue</u>, No. 1:09-CV-01448-JLT, 2010 WL 3943519, at *9 (E.D. Cal. Oct. 1, 2010) ("the

16   ALJ's failure to elicit further explanation for the apparent incongruence between the

17   DOT and the VE's opinion on this issue was error and left leaves 'unresolved potential

18   inconsistenc[ies] in the evidence'") (internal citation omitted).

19       Here, the ALJ did not determine whether there was a reasonable explanation for

20   the conflict between Plaintiff's RFC limiting his hours of standing and walking and the

21   _____

22              occur intermittently during the remaining time.  The lifting

23              requirement for the majority of light jobs can be accomplished
             with occasional, rather than frequent, stooping.  Many unskilled

24           light jobs are performed primarily in one location, with the
             ability to stand being more critical than the ability to walk.

25           They require use of arms and hands to grasp and to hold and

26           turn objects, and they generally do not require use of the fingers
             for fine activities to the extent required in much sedentary

27           work.

28   SSR 83-10 (emphasis added).

finding Plaintiff could perform the jobs of sewing machine operator and production line solderer.  AR at 59-60.  The ALJ's attempt to place the burden on the VE to identify any potential conflicts between the VE's testimony and the DOT is insufficient to satisfy the ALJ's "affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [Dictionary of Occupational Titles]."[6]  Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4p (S.S.A. Dec. 4, 2000).  Even when the VE does not identify a conflict, "[i]f the VE's . . . evidence appears to conflict with the DOT, the [ALJ] *will* obtain a reasonable explanation for the apparent conflict."  Id. (emphasis added); see also Lorigo, 2014 WL 1577317, at *11 (ALJ erred in relying on VE testimony because "VE did not specifically cit to or note that her opinion was based on anything other than the DOT in determining that the occupations were performable in light of" the restrictions plaintiff's ability to sit, stand or walk).  The ALJ did not ask the VE to explain the conflict between Plaintiff's RFC and the jobs of sewing machine operator and production solderer, much less make a determination as to whether that explanation is "reasonable."  Zavalin, 778 F.3d at 846.  The ALJ's failure to question the VE further was error.  Massachi, 486 F.3d at 1154 (citing Prochaska, 454 F.3d at 736); see also Seaman v. Astrue, No. C09-5353FDB-KLS, 2010 WL 1980331, at *10 (W.D. Wash. Apr. 19, 2010) report and recommendation adopted, No. C09-5353 BHS, 2010 WL 1980330 (W.D. Wash. May 17, 2010) (holding "because of the ambiguity of the vocational expert's testimony, that testimony did not provide persuasive evidence sufficient for the ALJ to deviate from the DOT").

---

[6] The ALJ asked the VE: "And do you understand that if you give us an opinion which conflicts with the information in the Dictionary of Occupational Titles that you need to advise us of the conflict and the basis for your opinion?"  AR at 59.  The VE responded that she did.  Id.

1    Lastly, the error was not harmless because there is a "gap in the record," and this

2 matter must be remanded for further proceedings.  Zavalin, 778 F.3d at 846; see also

3 Massachi, 486 F.3d at 1153-54.

4

5                                    **VIII.**

6                                   **RELIEF**

7    Remand for further proceedings is appropriate where additional proceedings could

8 remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172,

9 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Because the

10 ALJ failed to properly determine the conflict between the VE's testimony and the DOT is

11 reconcilable, remand is proper.  On remand, the ALJ must determine whether Plaintiff

12 can actually perform the requirements of the positions identified given the limitations

13 imposed on his ability to walk and stand for extended periods of time.

14

15                                    **IX.**

16                                **CONCLUSION**

17    For the foregoing reasons, IT IS ORDERED that judgment be entered

18 REVERSING the decision of the Commissioner and REMANDING this action for

19 further proceedings consistent with this Order.

20

21 DATED: September 2, 2015        _____

22                                HON. KENLY KIYA KATO
                                United States Magistrate Judge

23

24

25

26

27

28

14